In re MiSCOTT CORPORATION, f/k/a MiScott Construction Corp., Debtor.

MiSCOTT CORPORATION, f/k/a MiScott Construction Corporation, a Florida corporation, Plaintiff,

v.

ZAREMBA WALDEN CO., a Florida corporation; and Walden Communities, Inc., a Florida corporation, d/b/a Walden Development Co.; Zaremba Communities Co., a Florida corporation; Florida Power and Light Company, a public utility company; Dade County, Florida, a political subdivision of the State of Florida; Glendale Federal Savings and Loan Association, a savings and loan association; and Safeco Insurance Company of America, a foreign insurance company, Defendants.

Bankruptcy Nos. 84–01235–BKC–SMW, 84–0647–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

June 3, 1985.

Robert Paul Keeley, Zeiher & Schroeder, Raymond B. Ray, Fort Lauderdale, Fla., for debtor.

Robert Plafsky, Ruden, Barnett, McClosky, Schuster & Russell, P.A., Fort Lauderdale, Fla., for Walden.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court as an adversary proceeding by the Debtor on a Complaint to Foreclose Mechanics' Lien and Collect Monies Due, and the Court having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel; reviewed the post trial memoranda, and being otherwise fully advised in the premises,

does hereby make the following findings of fact and conclusions of law:

Debtor, MiSCOTT CORPORATION, a general contracting company, filed its voluntary petition under Chapter 11 of Title 11, United States Code, on July 3, 1984; thereafter the Debtor instituted this adversary proceeding against ZAREMBA WALDEN CO. and WALDEN COMMUNITIES, INC., d/b/a WALDEN DEVELOPMENT CO. (hereinafter referred to as "WALDEN"), and SAFECO INSURANCE COMPANY OF AMERICA (hereinafter referred to as "SAFECO"). The action was tried on the Debtor's claim against WALDEN for breach of contract, the Debtor's claim against WALDEN and SAFECO for recovery under a surety transfer bond, and on WALDEN's counterclaim against the Debtor for breach of contract.[1]

On June 22, 1983, WALDEN, as owner, and the Debtor, as general contractor, entered into a written contract consisting of an Agreement and General Conditions Between Contractor and Owner, and a Rider annexed to and expressly made a part of the Agreement and General Conditions, providing for the construction of a residential development known as McArthur Park at Misty Lake. The contract provided for a fixed sum of two million seven hundred fifty-four thousand one hundred forty-four dollars ($2,754,144.00), plus a bonus for early completion of the project. The fixed sum was to be paid in progress payments together with a retainage payment, denominated the "final payment". It is undisputed that WALDEN paid the Debtor all the progress payments leaving the final payment of the fixed sum in an amount of one hundred forty-one thousand five dollars and forty cents ($141,005.40) unpaid to the Debtor. The Debtor's claim for breach of contract seeks one hundred forty-one thousand five dollars and forty cents ($141,005.40) from WALDEN, as well as a bonus of two hundred ninety-one thousand dollars ($291,000.00) for early completion of the project. On June 28, 1984, the Debtor recorded a claim of lien against the project, which lien was transferred to a surety bond on August 6, 1984, pursuant to § 713.24, Florida Statutes.

WALDEN contends that the Debtor is entitled to a bonus of only thirty-eight thousand five hundred dollars ($38,500.00), and that the Debtor is not entitled to the final payment under the contract. Further, WALDEN seeks damages against the Debtor in the amount of seventeen thousand four hundred seventy-two dollars and fifty cents ($17,472.50), incurred as a result of the Debtor's failure to pay its subcontractors.

The provision in the contract dealing with final payment reads as follows:

> Final payment shall be made to CONTRACTOR within thirty (30) days after the completion of the Work covered by this Agreement, provided the CONTRACTOR has given to OWNER satisfactory evidence that the premises are free from all liens or other claims chargeable to the premises or the CONTRACTOR and has obtained a Certificate of Occupancy or other such document establishing that the Work has been completed.

The parties agree that the work was completed by the Debtor; the factual issue to be resolved by the Court is whether the Debtor gave WALDEN satisfactory evidence that the premises were free from all liens or other claims chargeable to the premises. The Court finds that the Debtor failed to meet its burden of proof on this issue.

In accordance with Florida law, the owner is entitled to retain final payment until such time as the general contractor furnishes the owner with a contractor's affidavit. §§ 713.06(3)(d)1; 713.06(3)(d)5; 713.06(3)(f), Fla.Stat. Upon completion of the work, the Debtor supplied WALDEN with

---

1. The Debtor voluntarily dismissed Defendant Glendale Federal Savings & Loan Association. The Debtor sought no relief against Defendant Zaremba Communities, Co. at trial, and therefore said Defendant is dismissed. Defendants Florida Power and Light Company and Dade County, Florida, were not served with the Complaint and therefore are unaffected by the Court's findings.

a contractor's affidavit which established that as of July 9, 1984, the Debtor owed its subcontractors two hundred forty-two thousand four hundred ninety-seven dollars and ninety-three cents ($242,497.93). These debts constituted claims chargeable to the premises and, in fact, liens totalling one hundred seventy-five thousand forty-two dollars and fifty cents ($175,042.50) were ultimately filed by subcontractors against the project. WALDEN's testimony indicated that the custom established between the parties, from prior projects, was that the Debtor was to furnish final releases of lien from all subcontractors *before* it was entitled to receive final payment from the owner. Similarly, in this instance, upon request for final payment, WALDEN demanded final releases of liens from all subcontractors before making final payment. It was undisputed that the Debtor failed to furnish WALDEN with final releases of lien from all subcontractors. After obtaining relief from stay, WALDEN dealt directly with the subcontractors and paid their claims in order to obtain final releases and satisfactions of lien.

■ Therefore, this Court finds that the Debtor is not entitled to the one hundred forty-one thousand five dollars and forty cents ($141,005.40) final payment sought from WALDEN.

Next, the Court turns to the Debtor's claim for a bonus. The provision in the contract dealing with the bonus is found in Rider Section 27 and reads as follows:

> Owner agrees that, if Contractor completes all Work contemplated by the Contract Documents ahead of schedule, Contractor shall be entitled to the sum of FIVE HUNDRED AND 00/100 ($500.00) DOLLARS per day for each day that all of the Work contemplated by the Contract Documents is completed prior to the time required by the Contract Douc-ments (sic).

The Debtor asserts that the language of Rider Section 27 is ambiguous and, consequently, extrinsic evidence is admissible to clarify the intent of the parties. WALDEN contends that Section 27 is clear and unambiguous and, accordingly, the language of the contract itself is controlling regarding the intention of the parties. The Debtor interprets Section 27 to mean that the Debtor is to be paid five hundred dollars ($500.00) a day for each day that it delivers each individual building early. WALDEN interprets Section 27 to mean that the Debtor is entitled to five hundred dollars ($500.00) per day from the date that the entire project is completed early.

■ This Court finds that Section 27 is susceptible to several interpretations, and, therefore, extrinsic evidence must be considered in conjunction with the language of the contract in determining the intention of the parties. *Ocean Reef Club, Inc. v. UOP, Inc.*, 554 F.Supp. 123 (S.D.Fla.1982). After careful consideration of the extrinsic evidence, this Court finds that the Debtor failed to carry its burden of proof in demonstrating that the Debtor is entitled to a bonus of two hundred ninety-one thousand dollars ($291,000.00). In fact, the Court's interpretation of Section 27 is contrary to the position assumed by the Debtor.

The project consisted of Phases I and II—Buildings 1 through 8. The parties agree upon the scheduled completion date of each building of the project, and the actual dates of completion. Each building was completed between seventy (70) and seventy-seven (77) days ahead of schedule; Building 8, the last to be built, was completed seventy-seven (77) days ahead of schedule. WALDEN contends that the Debtor is entitled to a bonus of five hundred dollars ($500.00) a day times seventy-seven (77) days, to wit: thirty-eight thousand five hundred dollars ($38,500.00).

In determining the intention of the parties to the contract, the Court must look to the language employed, the actions of the parties during negotiations, and the subsequent actions of the parties to determine the interpretation that they themselves placed upon the contract language. *Morris v. Federated Mutual Insurance Co.*, 497 F.2d 538 (5th Cir.1974); *Brown v. Financial Service Corporation International*, 489 F.2d 144 (5th Cir.1974).

The Court finds that in formulating the contract WALDEN insisted on a penalty provision that would insure that each building was completed on schedule. The following language appearing in the fourth draft was used in that regard:

> Contractor agrees that in addition to Owner's other rights that if Contractor shall not timely complete any portion of the work because of the fact that it will be impossible to determine the exact amount of damages which Owner will suffer that in addition to all the other remedies which are available to Owner, Owner shall have the right to liquidated damages in the amount of Five Hundred Dollars ($500) per day for each day that Contractor is late in completing the work contemplated by Contract Documents.

The Court further finds that in subsequent negotiations WALDEN added a bonus provision to the penalty provision as an accommodation to the Debtor, that was not to operate on a per building basis, as was the penalty provision. Upon receipt of the sixth draft containing the bonus language, the Debtor complained that the penalty/bonus provision was not a two-way provision. The Debtor's request for a bonus per building provision was rejected, no further drafts were composed, and the parties signed the Agreement with the language as it appears in Rider Section 27.

■ When Section 27 is read in conjunction with the parties' negotiations, with the balance of the contract, and the words therein given their ordinary and natural meaning, Section 27 means that a bonus could only be earned if the entire project was completed ahead of schedule. Each individual building constitutes a component of the project, and the aggregate of all the components equals "all of the Work". Therefore, the bonus is to be calculated at the rate of five hundred dollars ($500.00) per day from the date of actual completion of the entire project to the required completion date of the entire project.

The Court finds the subsequent conduct of the parties to be consistent with this interpretation of the contract. WALDEN consistently rejected the Debtor's demands for a bonus upon the completion of Buildings 1, 2, 3, and 4. At the completion of Phase I, the Debtor provided WALDEN with a release of lien for the alleged bonus for Buildings 1 through 4. Moreover, WALDEN's testimony indicated that a reserve in the amount of only thirty-five thousand dollars ($35,000.00) was established by WALDEN for the payment of a bonus in the event that construction of Phase II continued ahead of schedule.

No individual demands for bonuses were made by the Debtor upon the completion of Buildings 5, 6, 7, and 8. Before completion of all eight (8) buildings, WALDEN wrote the Debtor a letter reiterating WALDEN's position that a bonus could be earned only upon early completion of the entire project, not individual buildings. Subsequently, WALDEN forwarded to the Debtor a copy of a legal opinion confirming WALDEN's position.

Therefore, after careful consideration of the testimony and evidence presented, this Court finds that the Debtor is entitled to a bonus of thirty-eight thousand five hundred dollars ($38,500.00).

WALDEN counterclaimed against the Debtor for breach of contract alleging that the Debtor failed to insure that all materials incorporated into the project were free of all liens and claims of subcontractors, and that the Debtor failed to hold the monies received from the owner in trust for payment of subcontractors, all in violation of Article XII of the contract. The parties stipulated that if WALDEN were to establish liability, then the amount of damages sustained by WALDEN was seventeen thousand four hundred seventy-two dollars and fifty cents ($17,472.50).

■ The Debtor contends that any failure to pay its subcontractors was excused by WALDEN's refusal to pay the "final payment" under the contract, and refusal to pay a two hundred ninety-one thousand dollar ($291,000.00) bonus. For the reasons set forth above, this Court has found that the Debtor was not entitled to the "final payment", nor a bonus of two hundred ninety-one thousand dollars ($291,000.00). This Court further finds that prior to the

first subcontractor's lien being filed on the project, WALDEN tendered to the Debtor the final payment of one hundred forty-one thousand dollars ($141,000.00) and a bonus of at least thirty-eight thousand five hundred dollars ($38,500.00) in exchange for final releases of lien from all subcontractors, to which WALDEN was entitled. The Debtor rejected the tender and insisted on a bonus of two hundred ninety-one thousand dollars ($291,000.00). Thereafter, the Debtor recorded its claim of lien and thirteen subcontractors recorded their claims of lien.

▮ The Debtor testified at trial that it had no money with which to pay the subcontractors listed on its contractor's affidavit. The Debtor's contracts with its subcontractors totaled less than 2.7 million dollars, yet as of July 9, 1984, the Debtor still owed its subcontractors two hundred forty-two thousand four hundred ninety-seven dollars and ninety-three cents ($242,497.93), far in excess of the retainage under the contract with WALDEN. The Debtor's Voluntary Petition in bankruptcy was filed on July 3, 1984. After obtaining relief from stay, over the objections of the Debtor, WALDEN paid the subcontractors and obtained releases in favor of WALDEN and the Debtor. Accordingly, the Court finds that the Debtor failed to hold WALDEN's money in trust to pay the subcontractors.

The Debtor has not sustained its affirmative defenses. Therefore, after careful consideration of all the evidence, the Court finds that the Debtor is liable for breach of contract, and has damaged WALDEN in the amount of seventeen thousand four hundred seventy-two dollars and fifty cents ($17,472.50).

▮ Having found that WALDEN offered the Debtor an amount in excess of that ultimately awarded to the Debtor, the Court further finds that WALDEN is the prevailing party under the claim to foreclose the Debtor's claim of lien, and under the claim and counterclaim for breach of contract. *S.C.M. Associates, Inc. v. Rhodes*, 395 So.2d 632 (Fla. 4th DCA 1981); *Monde Investments No. 2, Inc. v. R.D.,*

*Taylor-Made Enterprises, Inc.*, 344 So.2d 871 (Fla. 4th DCA 1977). As the prevailing party in this litigation, WALDEN is entitled to an award of attorneys' fees pursuant to § 713.29, Florida Statutes, and Article VIII of the contract. This Court reserves jurisdiction to make such an award upon application by WALDEN.

Judgment shall be entered in accordance with these Findings of Fact and Conclusions of Law.